**Barry W. RITCHIE, Petitioner–Appellant,**

v.

**Don EBERHART, Respondent–Appellee.**

No. 92–5643.

United States Court of Appeals, Sixth Circuit.

Argued March 5, 1993.

Decided Dec. 8, 1993.

Certiorari Denied Feb. 22, 1994.

See 114 S.Ct. 1111.

---

Barry W. Ritchie (briefed), pro se.

Gregory D. Smith (argued), Richardson & Richardson, Clarksville, TN, for petitioner-appellant.

Kathy M. Principe, Asst. Atty. Gen. (briefed), Charles W. Burson, Atty. Gen., Bettye Springfield Carter, Asst. Atty. Gen., John B. Nisbet, III, Asst. Atty. Gen. (argued), Nashville, TN, for respondent-appellee.

Before: MERRITT, Chief Judge; NELSON, Circuit Judge; and CONTIE, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

This is an appeal from the dismissal of a second habeas corpus petition filed under 28 U.S.C. § 2254 by Barry W. Ritchie, a Tennessee prison inmate. Mr. Ritchie's first such petition was denied on the merits. His second petition, which repeated the single claim made earlier as well as asserting three new claims, was dismissed as an abuse of the writ.

Although Mr. Ritchie personally signed a verification of the first petition, thereby attesting to a knowledge of its contents, he now contends that the lawyer who drafted it for him ignored instructions to include the additional claims. Mr. Ritchie does not know, he says, why the claims were left out.

Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that a second federal habeas petition may be dismissed, notwithstanding its assertion of new grounds for relief, if "the judge finds that the failure of the petitioner to assert those grounds in [the] prior petition constituted an abuse of the writ." United States District Judge R. Allan Edgar made such a finding here. The question presented on appeal is whether Mr. Ritchie's claim of unexplained attorney error nonetheless entitles him as a matter of law to another opportunity to try to persuade a federal court to set aside his state-court conviction.

Applying the logic of the Supreme Court's opinion in *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), we give the same answer to this question that four of our sister circuits have given under similar circumstances: "No." We shall affirm the dismissal of the second petition.

## I

Twelve years ago the State of Tennessee charged petitioner Ritchie with aggravated rape and armed robbery. Mr. Ritchie was placed on trial in the Criminal Court for Hamilton County, Tennessee, where a jury found him guilty as charged. The trial court entered judgment on the verdict, and Mr. Ritchie was sentenced to ten years' imprisonment for the armed robbery offense and life imprisonment for the aggravated rape offense.

Mr. Ritchie then made a series of efforts to obtain judicial relief under procedures authorized by Tennessee law. First he appealed to the Tennessee Court of Criminal Appeals. That court affirmed the conviction. Then he sought permission to appeal to the Supreme Court of Tennessee. The Supreme Court denied his request. Then he returned to the Court of Criminal Appeals, where he filed a delayed petition for post-conviction relief. That petition was denied too, as was a request for permission to appeal the denial to the Tennessee Supreme Court. Mr. Ritchie was represented by counsel throughout all of these proceedings in the Tennessee courts.

On June 2, 1987, still represented by counsel, Mr. Ritchie filed his first federal habeas petition in the United States District Court for the Eastern District of Tennessee. The petition set forth a single ground for relief: a claim that Mr. Ritchie's constitutional rights had been violated when the Tennessee trial court refused to grant a continuance. (The continuance had been requested to permit the service of subpoenas on witnesses who had conducted certain scientific tests and whose names and addresses had been furnished to Mr. Ritchie's counsel on the Friday before the start of the trial, which began on a Tuesday.) The 1987 habeas petition was signed by Mr. Ritchie's lawyer, and it bore a verification in which Mr. Ritchie himself declared, under penalty of perjury, that the contents of the petition were "true and correct."

After considering the petition on the merits, the district court entered judgment against Mr. Ritchie. The judgment was affirmed by our court on appeal. See *Ritchie v. Livesay*, No. 88–5773, 1989 WL 34041, 1989 U.S.App.LEXIS 3999 (6th Cir. Mar. 29, 1989) (order reported without published opinion at 872 F.2d 1028). Because the record made it clear that the testimony of the witnesses in question would only have been cumulative, we held that Mr. Ritchie had failed to show that he was denied a fundamentally fair trial.

In December of 1990, acting *pro se* for the first time, Mr. Ritchie asked the district

court for permission to proceed there *in forma pauperis.* With his application he tendered a second federal habeas petition. The new petition set forth four grounds for relief: the denial of the request for a continuance, the use of an allegedly illegal lineup, the denial of a request to have a lawyer present at the lineup, and the failure of the state prosecutor to disclose crime laboratory test results until the Friday before trial.

· The district court entered an order granting Mr. Ritchie permission to proceed *in forma pauperis.* Noting that there appeared to be "a high probability that the petition will be barred under Rule 9(b) for abuse of the writ," however, the order gave Mr. Ritchie 20 days within which to show cause why the failure to raise the new claims earlier should be excused.

Utilizing a court-supplied form (Model Form 9, 28 U.S.C. foll. § 2254), Mr. Ritchie responded as follows:

> · "I had a lawyer[,] Mr. Jerry Summers[,] file my previous petition. I don't know or understand why he didn't raise these grounds in that petition. I filed the present petition personally. I was not in touch with my [attorney] before he filed the previous petition." ·

On the basis of this response, and prior to the entry of an appearance by representatives of the State of Tennessee, the district court concluded that Mr. Ritchie's failure to raise the three new claims in his prior petition was excusable. The respondent, a Tennessee prison warden, was given 30 days in which to answer the new claims or otherwise respond.

Through the state attorney general's office, the warden then moved to dismiss the new petition on the ground it amounted to an abuse of the writ. Following the filing of a response from Mr. Ritchie, and upon reconsideration, the district court entered an order granting the motion to dismiss. The order was accompanied by a memorandum opinion

in which the court explained its reasons for concluding that there had been an abuse of the writ and that Mr. Ritchie's allegations of attorney error were not sufficient to excuse it. This appeal followed. .

## II

"Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation...." *Sanders v. United States,* 373 U.S. 1, 18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963).

▮▮▮▮ The "abuse of the writ" doctrine explicated in *Sanders*—a doctrine that limits the ability of habeas petitioners to file successive petitions—has repeatedly been approved by Congress. In addition to approving Rule 9(b) of the Rules Governing Habeas Corpus Cases,[1] which, as we have seen, authorizes dismissal of a second or successive habeas petition alleging new grounds "if ... the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ," Congress has enacted 28 U.S.C. § 2244(b). That statutory provision reads in pertinent part as follows:

> "[A] subsequent application for a writ of habeas corpus need not be entertained ... unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier petition for the writ, and unless the court ... is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground *or otherwise abused the writ.*" (Emphasis supplied.)

Section 2244(b), according to its legislative history, contemplates a "qualified application of the doctrine of res judicata" in habeas corpus litigation. S.Rep. No. 1797, 89th Cong., 2d Sess. 2 (1966). .

Until recently, the Supreme Court has not devoted much attention to the standard for

---

1. These rules were proposed by the United States Supreme Court under the Rules Enabling Act. Their effective date was delayed initially by Pub.L. 94–349, but with amendments set forth in § 2 of Pub.L. 94–426 Congress then expressly approved the rules. See § 1 of the latter statute,

as quoted in the Historical Note following 28 U.S.C. § 2254. Such rules have the same binding effect as statutes. See *Bank of Nova Scotia v. United States,* 487 U.S. 250, 255, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988).

determining when an abuse of the writ has occurred. This has now changed; after giving the subject "careful consideration" in *McCleskey v. Zant,* 499 U.S. 467, 477, 111 S.Ct. 1454, 1461, 113 L.Ed.2d 517 (1991), the Court held in *McCleskey* that the writ is abused when, in a subsequent petition, a petitioner for the first time raises a claim that could have been raised before but was omitted from the earlier petition because of "inexcusable neglect." 499 U.S. at 489, 111 S.Ct. at 1468.

Citing *Delo v. Stokes,* 495 U.S. 320, 110 S.Ct. 1880, 109 L.Ed.2d 325 (1990), and *Antone v. Dugger,* 465 U.S. 200, 104 S.Ct. 962, 79 L.Ed.2d 147 (1984), the *McCleskey* Court stressed that "a petitioner can abuse the writ by raising a claim in a subsequent petition that he could have raised in his first, *regardless of whether the failure to raise it earlier stemmed from a deliberate choice.*" 499 U.S. at 489, 111 S.Ct. at 1468. (Emphasis supplied.) "Abuse of the writ," the Court declared in words of unmistakable clarity, "is not confined to instances of deliberate abandonment." *Id.* 499 U.S. at 489, 111 S.Ct. at 1467. The standard adopted by the Court— "inexcusable neglect"—is a standard that "demands more from a petitioner than the standard of deliberate abandonment." *Id.* 499 U.S. at 490, 111 S.Ct. at 1468.

What is demanded of a habeas petitioner at the federal court stage, *McCleskey* held, is indistinguishable from what is demanded of him at the state court stage. In the state courts, of course, the petitioner must avoid any "procedural default"—and the commission of such a default will be fatal to a subsequent federal habeas suit unless the petitioner can satisfy the "cause and prejudice" test adopted in *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977).

To show "cause" sufficient to excuse a procedural default, the petitioner must point to "some objective factor external to the defense...." See *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). At the federal level, similarly, the habeas petitioner is bound to present all available claims for relief in his first habeas petition—and failure to do so will doom any subsequent federal petition, *McCleskey* teaches, unless the petitioner can show in this situation as well that the omission was caused by "some objective factor external to the defense...." 499 U.S. at 493, 111 S.Ct. at 1470.

A procedural default is excused if caused by attorney error so glaring as to constitute ineffective assistance of counsel in a *constitutional* sense, *McCleskey* noted, but "[a]ttorney error short of [constitutionally] ineffective assistance of counsel ... does not constitute cause and will not excuse a procedural default." *Id.,* citing *Murray v. Carrier,* 477 U.S. at 486–88, 106 S.Ct. at 2644–45. Attorney error is not an "objective factor external to the defense," in other words, unless it constitutes a denial of a constitutional right.

The *McCleskey* Court disclaimed any intent to suggest that there is a *constitutional* right to counsel in federal habeas cases. *Id.* 499 U.S. at 495, 111 S.Ct. at 1471. On the contrary, quoting *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987), the Court reiterated that "the right to appointed counsel extends to the first appeal of right, and no further." But *McCleskey* did not explicitly address the question whether attorney error of a sort that would amount to constitutionally ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), would constitute "excusable neglect" if committed at a stage where there is no constitutional right to counsel.

In *Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), a case decided two months after *McCleskey,* the Supreme Court came to grips with precisely that question. Because of an inadvertent error on the part of his lawyer, the petitioner in *Coleman* failed to file a state-court habeas appeal on time—and when the petitioner subsequently sought habeas relief in the federal courts, he argued that his attorney's error constituted "cause" sufficient to excuse the procedural default.

The Supreme Court rejected this argument, declaring that "[t]here is no constitutional right to an attorney in state post-conviction proceedings." —— U.S. at ——,

111 S.Ct. at 2566. A petitioner cannot claim constitutionally ineffective assistance of counsel, the *Coleman* Court held, where the proceedings in which counsel was ineffective were not proceedings in which there was a constitutional right to counsel. *Id.*

The *Coleman* Court also rejected, flat out, an argument that "[w]here there is no constitutional right to counsel ... it is enough that a petitioner demonstrate that his attorney's conduct would meet the *Strickland* standard, even though no independent Sixth Amendment claim is possible." *Id.* Under the cause and prejudice test, *Coleman* reaffirmed, the "cause" that can excuse a default "must be something *external* to the petitioner, something that cannot fairly be attributed to him...." *Id.* Attorney error, as such, is not "external" to the client: "Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting or failing to act, in furtherance of the litigation...." *Id.* —— U.S. at ——, 111 S.Ct. at 2566–67. What matters, *Coleman* went on to explain, "is not the gravity of the attorney's error ... but that it constitutes a violation of petitioner's [constitutional] right to counsel so that the error must be seen as an external factor...." *Id.* —— U.S. at ——, 111 S.Ct. at 2567.

### III

■ Applying these principles to the case at bar, it seems clear to us that the district court was justified in dismissing Mr. Ritchie's second federal habeas petition as an abuse of the writ.

■ Mr. Ritchie had no constitutional right to effective assistance of counsel in the preparation of his original federal petition. See *Pennsylvania v. Finley*, 481 U.S. at 556–57, 107 S.Ct. at 1993–94. Even if the lawyer who drafted the first petition disregarded express instructions to include additional claims, and even if Mr. Ritchie did not ratify

the omission when he verified the pleading, the omission would clearly constitute "inexcusable neglect" incapable of serving as the kind of external "cause" sufficient to excuse a procedural default. See *Coleman v. Thompson*, —— U.S. at —— – ——, 111 S.Ct. at 2566–68. *Cf. Johnson v. Singletary*, 938 F.2d 1166, 1175 (11th Cir.1991) (counsel's failure to heed instructions could not constitute "cause" sufficient to excuse procedural default where the failure occurred in a proceeding as to which there was no constitutional right to effective assistance of counsel), *cert. denied*, —— U.S. ——, 113 S.Ct. 361, 121 L.Ed.2d 274 (1992). And if the alleged attorney error could not excuse a procedural default, neither could it excuse the default that occurred when the claims Mr. Ritchie now wishes to assert were omitted from the first petition. See *McCleskey v. Zant*, 499 U.S. at 493–94, 111 S.Ct. at 1470–71.

It is true, to be sure, that the jurisprudential underpinnings of the rule requiring that state procedures be complied with are not identical to the jurisprudential underpinnings of the rule requiring that all available federal habeas claims be asserted at the first opportunity. But this fact hardly precludes use of the same standard to determine whether a violation of either rule can be *excused*—and *McCleskey* squarely held that "the same standard applies...." *Id.* 499 U.S. at 493, 111 S.Ct. at 1470.

We are strengthened in our conclusion that the Supreme Court meant what it said in *McCleskey* by the knowledge that at least four of our sister circuits would decide the case at bar the same way we do. See *Johnson v. Hargett*, 978 F.2d 855, 859 (5th Cir. 1992) ("even if Johnson's first federal habeas counsel were found to have been ineffective, that cannot be cause, under *McCleskey*, for Johnson's failure to raise [a subsequently-asserted] *Brady* claim in the first round of federal habeas"), *cert. denied*, —— U.S. ——, 113 S.Ct. 1652, 123 L.Ed.2d 272 (1993);[2]

**2.** Mr. Ritchie relies heavily on dicta in a pre-*McCleskey* Fifth Circuit decision, *Jones v. Estelle*, 722 F.2d 159, 167 (5th Cir.1983) (en banc), *cert. denied*, 466 U.S. 976, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984), where the court said that "incompetence of habeas counsel when it explains an omission or flawed submission can excuse what

otherwise would amount to an abuse of the writ." Although *McCleskey* cited *Jones v. Estelle* as an example of the appeals court decisions which recognize that "a petitioner may abuse the writ by failing to raise a claim through inexcusable neglect," 499 U.S. at ——, 111 S.Ct. at 1468, the Supreme Court obviously did not endorse the

*Blair v. Armontrout,* 976 F.2d 1130, 1139 (8th Cir.1992) ("Blair may not establish 'cause' based on ineffective assistance of counsel in a federal habeas case"), *cert. denied,* —— U.S. ——, 113 S.Ct. 2357, 124 L.Ed.2d 265 (1993); *United States v. Mac-Donald,* 966 F.2d 854, 859 n. 9 (4th Cir.) ("attorney error in an initial habeas proceeding cannot serve as cause to review subsequent petitions"), *cert. denied,* —— U.S. ——, 113 S.Ct. 606, 121 L.Ed.2d 542 (1992); *Harris v. Vasquez,* 949 F.2d 1497, 1513–14 (9th Cir.1991) ("Because Harris has no constitutional right to counsel in his earlier habeas proceedings . . . no error by his habeas counsel could constitute . . . cause under the standard expressed in *McCleskey* "), *cert. denied,* —— U.S. ——, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992).

We have no doubt that habeas corpus in general, and the cause and prejudice test in particular, are governed by principles of equity. Because this is so, the federal courts would undoubtedly entertain a second or successive petition from Mr. Ritchie if he could point to a constitutional violation that probably resulted in the conviction of one who was actually innocent. See *McCleskey v. Zant,* 499 U.S. at 494, 111 S.Ct. at 1470; *Murray v. Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649–50. We have no more reason to suppose that Mr. Ritchie is actually innocent, however, than did any of the other courts before which he has appeared. And *McCleskey* makes it very clear indeed that no principle of law or equity requires the federal courts to accept endless habeas corpus applications from the same individual.

"Perpetual disrespect for the finality of the convictions," as Justice Kennedy wrote for the Court in *McCleskey,* "disparages the entire criminal justice system." 499 U.S. at

492, 111 S.Ct. at 1469. In the words of the late Paul Bator, as quoted by Justice Kennedy:

"A procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of justice that cannot but war with the underlying substantive commands. . . . There comes a point where a procedural system which leaves matters perpetually open no longer reflects humane concern but merely anxiety and a desire for immobility." *Id.,* quoting Bator, 76 Harv.L.Rev. at 452–53.

The procedural system in place today has already accorded Mr. Ritchie a trial by jury, with the full panoply of protections required by the constitutions of Tennessee and of the United States. The system has further accorded Mr. Ritchie an appeal, as of right, to a higher court. It has accorded him an opportunity to seek a discretionary appeal to yet another court—the supreme court of his state. It has accorded him an opportunity to seek delayed post-conviction relief from an intermediate state court, and to seek appellate review, again, in the state supreme court. It has allowed Mr. Ritchie to go into a federal district court, as of right, to make a collateral attack on his conviction. And it has allowed an appeal, as of right, from the district court's denial of his claim. There comes a point, *McCleskey* tells us, where the finality of a conviction must be respected. Because Mr. Ritchie has failed to show any legally sufficient excuse for his failure to assert all of his constitutional claims in his first appearance before the federal district court, we think that this point has finally been reached here.[3]

proposition that inexcusable neglect becomes excusable, in habeas proceedings, if the neglect can be attributed to an incompetent lawyer. *Dean v. United States,* 788 F.Supp. 306 (E.D.Tex.1992), does not support such a proposition either; in *Dean* a habeas claim was omitted from an initial federal habeas petition by a petitioner who had no lawyer at all, competent or otherwise. And in *United States v. Flores,* 981 F.2d 231 (5th Cir. 1993), the Fifth Circuit held that *McCleskey* 's cause-and-prejudice standard applies to *pro se* litigants just as it does to those who are assisted by counsel. *Id.* at 236 n. 8.

3. The abuse of the writ doctrine is codified, to repeat, in two enactments of equal status: Rule 9(b) and 28 U.S.C. § 2244(b). Rule 9(b) makes no mention of deliberately withholding a ground for relief. Section 2244(b) identifies deliberate withholding as a type of abuse, but in the phrase "or otherwise abused the writ" it then makes clear that other types of abuse may also justify rejection of subsequent habeas applications.

Chief Judge Merritt suggests that by failing to read § 2244(b) more restrictively than Rule 9(b), we have failed to take the language of § 2244(b)

## IV

■ Mr. Ritchie contends that Judge Edgar's preliminary ruling on the excusability of the first petition's omission of the claims now sought to be asserted constituted "res judicata." That doctrine has no application in the absence of a final judgment, however—and the law-of-the-case doctrine, to which Mr. Ritchie probably intended to refer, does not prohibit a district court from reconsidering a preliminary ruling.

Judge Edgar did not abuse his discretion in reconsidering his initial ruling. We note, in this connection, that the initial ruling came at a nonadversarial stage, before the court had heard anything at all from the respondent warden. The final ruling came after both sides had been heard from, and we think it was fully in accord with binding Supreme Court precedent.

The order dismissing Mr. Ritchie's latest petition for a writ of habeas corpus is **AFFIRMED.**

CONTIE, Senior Circuit Judge, concurring.

I concur with the conclusion that defendant's second habeas petition should be dismissed as an abuse of the writ, but for a different reason. I do not believe that this case presents the issue of whether ineffective assistance of counsel in regard to a prior habeas petition constitutes excusable neglect, which would allow a defendant to file a second habeas petition that was not an abuse of the writ. It is not necessary to resolve this issue in the present case because what defendant Ritchie is alleging is mere attorney error, not ineffective assistance of counsel. In *Murray v. Carrier,* 477 U.S. 478, 486–87, 106 S.Ct. 2639, 2644–45, 91 L.Ed.2d 397 (1986), the Supreme Court held that in that case the omission of a claim from a petition for appeal was attorney error and did not constitute cause for a procedural default. Similarly, in the present case, I believe the alleged omission only rises to the level of attorney error and does not constitute ineffective assistance of counsel. Given the fact that defendant personally signed a verification of his first habeas petition, it can be presumed that he knew of the issues being raised and ratified any omissions. Moreover, as the Supreme Court stated in *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), there is no duty for counsel to raise every " 'colorable' claim suggested by a client." *Id.* at 754, 103 S.Ct. at 3314.

Under the Supreme Court's decision in *Murray v. Carrier,* 477 U.S. at 486–88, 106 S.Ct. at 2644–45, attorney error short of ineffective assistance of counsel does not constitute cause and will not excuse a procedural default. *McCleskey v. Zant,* 499 U.S. at 494, 111 S.Ct. 1454, 1470 (1991) states that the same standard is to be used in regard to the abuse of the writ doctrine as is used in determining procedural default. Because attorney error does not constitute cause for excusing a procedural default at the state level, it also does not constitute excusable neglect under the abuse of the writ doctrine at the federal level. Because defendant Ritchie alleges mere attorney error, he has not demonstrated excusable neglect that would

seriously; we have, he says, overlooked the fact that § 2244(b) deals expressly with situations where newly asserted grounds have been withheld deliberately, while using more general language to deal with situations in which the writ has "otherwise" been abused.

But Congress did not qualify its "or otherwise" language in § 2244(b), and we have no more overlooked what Congress said than we have overlooked what the Supreme Court says Congress said. Even if *Coleman* had never been decided, *McCleskey* would still tell us, in the plainest of English, that the federal courts are under no Congressional mandate to hear successive petitions asserting grounds for relief that were omitted from earlier petitions because of "inexcusable neglect." The Supreme Court may

have misread the "or otherwise" phrase of § 2244(b), to be sure, and Congress is free to correct the Supreme Court's error if error it was. Courts of appeals, as inferior courts, do not have that privilege.

The Supreme Court is not unfamiliar with the maxim *expressio unius est exclusio alterius,* and the Court nonetheless held in *McCleskey* that "or otherwise" extends to inexcusable neglect. We are not prepared to give § 2244(b) an interpretation that fails to take seriously the interpretation given it by the Supreme Court. We cannot excuse a neglect that is inexcusable, in short, on the strength of a Latin maxim which the Supreme Court did not see fit to invoke in *McCleskey.*

allow him to file a second habeas petition. For this reason, the judgment of the district court should be affirmed.

MERRITT, Chief Judge, dissenting.

The two opinions of my colleagues do not take seriously the language of the congressional enactment on habeas corpus. Judge Nelson argues that two recent Supreme Court decisions combine to prohibit a federal court from ever finding that ineffective assistance of counsel in the preparation of a habeas corpus petition can be sufficient "cause" for a petitioner's failure to raise all available claims in that petition. This reading squarely conflicts with federal legislation and is not required by Supreme Court precedent. Nor can I agree with Judge Contie's determination that "mere attorney error" is all that is at issue in this case and that such error can never constitute cause. I respectfully dissent.

The first rule upon which Judge Nelson relies was fashioned for cases involving abuse of the writ questions. *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). In *McCleskey,* the Court imported the cause and prejudice test from state procedural default law into abuse of the writ law. Under this test, claims raised for the first time in a successive habeas petition are allowed only if the petitioner can establish both a legitimate cause for the failure to include the claims in an earlier petition, and prejudice therefrom.

The second new rule was fashioned not in an abuse of the writ case, but in a "state procedural default" or "independent state ground" case. *Coleman v. Thompson,* — U.S. —, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The rule in *Coleman* is that ineffective assistance of counsel is not sufficient to establish cause in cases in which (1) counsel has allowed a state procedural default to occur which serves as an independent state ground barring review of the federal constitutional claim in state court, and (2) the default occurred in a state proceeding in which a defendant has no constitutional right to counsel.

In the instant case Judge Nelson imports the reasoning of *Coleman* into abuse of the writ cases. Noting that there is no right to counsel in a habeas proceeding, Judge Nelson combines these two rules to reach the conclusion that ineffective assistance of counsel may never serve as cause in an abuse of the writ or successive petition case.

Such action is unnecessary and contrary to the lawful directive of Congress, which we are bound to respect. The reasoning of *Coleman* should not be extended from the area of procedural default into habeas proceedings, for at least two reasons. First, Congress has specifically delineated the parameters of "cause" in the habeas context, in 28 U.S.C. § 2244(b), which mandates that federal courts must hear successive petitions asserting new grounds for relief provided these grounds were not deliberately withheld in earlier petitions. An attorney's inadvertent action surely falls within the scope of this mandate. Second, state procedural due process and habeas corpus differ sufficiently to require different applications of the cause and prejudice test.

\*    \*    \*    \*    \*    \*

It is true that four circuits have followed Judge Nelson's logic and combined the two rules, arriving at a new *per se* rule that neglect of counsel can never serve as a legitimate "cause" for raising a new claim in a second or successive habeas petition. See *Johnson v. Hargett,* 978 F.2d 855, 859 (5th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1652, 123 L.Ed.2d 272 (1993); *Blair v. Armontrout,* 976 F.2d 1130, 1139 (8th Cir. 1992), *cert. denied,* 113 S.Ct. 2357 (1993); *United States v. MacDonald,* 966 F.2d 854, 859 n. 9 (4th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 606, 121 L.Ed.2d 542 (1992); *Harris v. Vasquez,* 949 F.2d 1497, 1513–14 (9th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992).

None of these cases provide any real analysis of the question, however, and all ignore the clear language of a federal statute to the contrary. The federal statute codifying the abuse of the writ doctrine, 28 U.S.C. § 2244(b), explicitly prevents the automatic combination of the rules in *McCleskey* and *Coleman.* This statute tells federal courts that they must hear a successive petition if

the judge "is satisfied that the applicant has not on the earlier application *deliberately withheld* the newly asserted ground or otherwise abused the writ." 28 U.S.C. § 2244(b) (emphasis added). "Deliberately" does not mean its opposite, "unintentionally" or "indeliberately." Judge Nelson, and the circuits which have adopted the same logic, have overlooked this language. The statute allows a successive petition based on counsel's inadvertent failure to present previously all possible claims, but does not allow the "deliberate withholding" of a claim in order to raise it for the first time in a successive petition. "Affirmative words," as Chief Justice Marshall reminded us in *Marbury v. Madison*, 5 U.S. (1 Cranch) 87, 109, 2 L.Ed. 60 (1803), are usually, "in their operation, negative of other objects than those affirmed." "Expressio unius est exclusio alterius"—the expression of one thing excludes the other. *See* Singer, 2A Sutherland Statutory Construction § 47.23 (5th ed. 1992).

Judge Nelson gives great weight to the fact that Mr. Ritchie "personally signed a verification of the first petition" and that his attorney's failure to include all claims in that petition is "unexplained." However, this Court is not concerned with the factual determination of whether or not Ritchie's failure to submit all his claims in his first habeas petition was truly indeliberate. That is a matter for the district court. We must only determine whether the phrase "deliberately withheld the newly asserted ground or otherwise abused the writ" may be read to include inadvertent withholding of a claim by a lawyer. "Abuse of the writ" is not limited to withholding claims for use in successive petitions, as Judge Nelson seems to believe. A petitioner may "otherwise abuse the writ" by repeating claims raised in an earlier petition, by filing frivolous petitions, by waiting until the day before a scheduled execution to file a petition, etc. The phrase "otherwise abuse," therefore, does not negate the requirement that newly asserted claims be reviewed by this court absent deliberate withholding. Judge Nelson appears satisfied that the petitioner in this case has had a sufficient number of bites at the apple. However, since Congress has already determined the proper number and scope of habeas petitions, this

matter is not amenable to judicial discretion. That Congress is presently considering further limits on successive habeas petitions only reinforces my view that legislative action is required to change the law in this case. *See* 1993 S. 1441, Habeas Corpus Reform Act of 1993; 1993 H.R. 3131, amending 28 U.S.C. § 2244.

\*     \*     \*     \*     \*     \*

When the Supreme Court imported the cause and prejudice test from state procedural default law into abuse of the writ law, it did not hold that every circumstance establishing cause for a procedural default must be cause for an abuse of the writ, nor that no circumstance could establish cause for what would otherwise be an abuse of the writ unless it would also be cause for a procedural default. *McCleskey* held that the *"unity of structure and purpose* in the jurisprudence of state procedural defaults and abuse of the writ" justified importing the cause and prejudice test from state procedural default law into abuse of the writ law. *McCleskey,* 499 U.S. at 493, 111 S.Ct. at 1470 (emphasis added). The two areas of law are structurally similar in that each establishes an initial procedural barrier which can prevent a habeas petitioner from having a petition heard on the merits. They are similar in purpose in that they seek to promote the government's interest in finality, comity, federalism, and the orderly administration of justice. *See id.* 499 U.S. at 491–93, 111 S.Ct. at 1468–70. But these two areas of the law are not identical. State procedural defaults and successive petitions arise in different contexts, and so application of the cause and prejudice test may produce different results.

The most important difference between the two areas of law is their source. State procedural default law is based upon the independent state ground rule that a federal court may not correct a state court's error as to federal law if the state court's decision is also based upon a sufficient independent state law ground. *Coleman,* —— U.S. at ——, 111 S.Ct. at 2554. Because a state procedural default is a sufficient independent ground for a state court's denial of review of a federal constitutional claim, federal courts can only review such claims in carefully limit-

ed circumstances. Although this rule is based in part upon strong concerns of comity and federalism (concerns which are much weaker in the abuse of the writ situation), it is justified primarily by the Article III limitation on the jurisdiction of federal courts to cases and controversies. *See id.* (stating that the rule "is grounded in concerns of comity and federalism" and "the limits of this Court's jurisdiction"). If a federal court were to correct a state court mistake as to federal law when the state court decision is also supported by an independent state ground, it would be issuing an advisory opinion. *Id.* State procedural default law is, therefore, based upon strong constitutional considerations not present in abuse of the writ cases.

In contrast, abuse of the writ is a judicially developed doctrine which has been codified by Congress. Although there are constitutional limits on how liberally the courts or Congress may apply a cause and prejudice test in the context of state procedural default, there are no such limits in the context of abuse of the writ. Just as states may allow exceptions for procedural defaults based upon ineffective assistance of counsel in proceedings in which there is no constitutional right to counsel, e.g., *Lozada v. Warden,* 613 A.2d 818 (Conn.1992), *Palmer v. Dermitt,* 102 Idaho 591, 635 P.2d 955 (1981), so may, and so has, Congress. Title 28 U.S.C. § 2244 is a federal statute, it has not been ruled unconstitutional, and we are bound to apply its plain meaning. The statute requires a federal court to hear a successive writ if the "judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ." "Deliberately" does not mean "indeliberately"; the statute clearly contemplates that a claim not asserted in an earlier writ due to counsel's inadvertence may be heard on a subsequent petition. Congress has therefore determined that ineffective assistance of counsel may be cause for a failure to assert all available claims in a habeas petition.

\*     \*     \*     \*     \*     \*

For the reasons discussed above I do not agree with Judge Contie's determination that "mere attorney error" cannot constitute cause when the withholding of a claim is indeliberate. Judge Contie relies on *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), which, like *Coleman,* discusses cause in the context of a state procedural default case. The holding in *Carrier* is not dispositive with respect to the habeas petition at issue in the present case. Nor am I convinced that attorney error is all that is involved in this case. In *Carrier,* the Supreme Court held that the omission of a claim was attorney error and not cause for a procedural default. Ritchie alleges that his lawyer omitted *four* claims. Since the district court judge dismissed Ritchie's petition as a matter of law, these claims were not developed in the record below. Judge Contie may intuitively know the substance and character of Ritchie's claims but I am not sufficiently clairvoyant to know the facts of the matter in the absence of a record.

For these reasons, I would reverse the judgment of the district court and remand for determination whether Ritchie's habeas counsel provided ineffective assistance after undertaking to represent him by presenting his best arguments.